# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MATTHEW S. CARLSON,**
          **Petitioner,**

    **v.**                                **Case No. 06C0481**

**CATHY JESS,**
            **Respondent.**

---

## DECISION AND ORDER

Petitioner Matthew S. Carlson, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his 2002 conviction of first-degree sexual assault of a child, for which he was sentenced to fifty-five years in prison.  Petitioner argues that the trial court's denial of his motion to substitute counsel and for a continuance violated his Sixth Amendment right to counsel of choice and his Fourteenth Amendment right to due process, and that the state court of appeals's affirmance of the trial court's decision was unreasonable.

## I.  BACKGROUND

In 2002, a fifteen-year-old boy, G.J., reported to police that in 1996 and 1998, petitioner sexually assaulted him.  Soon after, the Ozaukee County District Attorney charged petitioner with several counts of sexual assault of a child.  Petitioner retained attorney Randall Kaiser to represent him, and at petitioner's May 20, 2002 arraignment, the trial court set the case for trial on August 27, 2002.  The parties agreed that the trial would take two days at most.  Petitioner did not exercise his right to request a speedy trial.

In the weeks leading up to the trial, petitioner twice asked for a brief continuance, once for additional preparation time and once to permit Kaiser's co-counsel to assist him at trial. The trial court denied both requests, citing its calendar and the fact that the complainant was a juvenile. In the meantime, petitioner's faith in his counsel deteriorated. On August 17, 2002, petitioner notified Kaiser that he had hired Attorney Robin Shellow to replace him. On August 19, Kaiser moved to withdraw as counsel. On August 23, petitioner, assisted by Shellow, moved to substitute Shellow for Kaiser as his counsel, conditioned upon the court's adjourning the trial date so that Shellow could prepare for trial. In support of the motion, Shellow stated that she needed to conduct additional investigation and interviews and to retain an expert.[1] She stated that she wished to explore why G.J. did not report the assaults until four to six years after they allegedly occurred and whether he had a motive to fabricate the accusations. She also wanted to review the techniques that social workers and police employed when they interviewed G.J. She noted that G.J. resided at Rawhide Boys Ranch, a privately-operated facility for seriously delinquent boys, and that G.J. had first accused petitioner of sexual assault while there. She stated that Rawhide's treatment approach was outside the norm and expressed concern about the counseling techniques that led to G.J.'s accusation.

The trial judge did not sit during the week of August 19 and thus did not promptly address Kaiser's motion to withdraw or petitioner's motion for substitution and a continuance. On August 26, the day before the trial was scheduled to begin, the judge returned to the bench and held a hearing. At the hearing, Kaiser stated:

---

[1]Shellow provided the court with the name of an expert with whom she expected to consult.

Case 2:06-cv-00481-LA   Filed 09/04/07   Page 2 of 27   Document 15

I am in a very tough position I think if I am not allowed to withdraw. As I said, our communication has completely broken down. We have differences in opinions, and I know they don't feel confident, he and his family. I think it's better for everyone if I withdraw.

I don't feel that the state is prejudiced by allowing me to withdraw. It's my understanding that they really only have one citizen witness. This is a case that allegedly occurred approximately six years ago and was not charged until April of this year. So I don't think Attorney Shellow or I – I don't want to speak for her, but I don't think we are requesting a long adjournment. This is the first request that Mr. Carlson has made for a new attorney.
. . . .

Mr. Carlson is in custody. He understands that if his wish for new counsel is granted and there is an adjournment he will remain in custody. . . . I think it would be in everyone's best interests to try this case once and get it over with. Mr. Carlson is not doing this to delay the proceedings unnecessarily. His family is not one of extreme means. They would not spend money to hire two counsels just to delay the process. They feel that they have to do what's in his best interests.

(Answer Ex. L at 3-5.) The prosecutor opposed Kaiser's request, stating that she had "grave concern for the withdrawal of this attorney given the fact that the proposed attorney . . . has already indicated in papers that she wouldn't be able to proceed tomorrow," (id. at 6), and citing the complainant's rights.

The court stated that "these things arise frequently in criminal cases" and noted that it had denied two earlier requests for adjournments because it was "a serious felony case." (Id. at 9.) The court conceded that "the defendant has a right to counsel," but stated:

I think here there are paramount issues. And the first issue is the orderly administration of this Court. I said last week or on the 14th that it would be months before this case got back on the trial calendar. And these late motions to withdraw, I am not inclined to grant it – in fact, I am not going to grant the motion to withdraw. This case is going to trial tomorrow. I don't see any reason why it can't go. This Court is prepared to try it.

I also am concerned that you have a young victim in this. Not as young as some the Court sees, but young. And I don't see anything in the motion papers that were filed by Attorney Shellow that is of a magnitude that

3

causes the Court to hesitate and say this Court can't go to trial tomorrow. I
am ordering it to go ahead.

(Id. at 9-10.)

Shellow requested to be heard and stated that the case involved factual issues that
Kaiser had not explored and constitutional issues that he had not researched. She stated
that she wished to explore the juvenile's motives for making the allegation and to engage
an expert regarding a number of questions, including questions raised by the juvenile's
reporting of the assaults years after they allegedly occurred. She said she also wished to
examine possible improper police coaching of the juvenile and a Miranda issue. She
further stated that Kaiser's failure to explore any of these matters raised issues of
"ineffective assistance of counsel." (Id. at 11.) The court's only response was: "Are you
prepared to try this case tomorrow?"

> SHELLOW: I am not prepared.
>
> THE COURT: Then I am not granting the motion . . . I understand the
> problems, but I find that a case that's been set 90 days out, and then to
> come in the day before and say I want to withdraw and I want it taken off the
> Court's calendar, is a serious problem for administration of this Court. And
> I realize there are issues. But I think Mr. Carlson can get a fair trial. His
> attorneys have been working on this. They have been in court numerous
> times. And I think there are other issues that have to be factored into the
> analysis, and I have done that, and I am denying the request.

(Id. at 13.)

The next day, before the trial commenced, petitioner asked to address the court.
He stated:

> I have tried on numerous occasions to convey my concerns to Mr. Kaiser, to
> no avail. I have been met with argumentative comments, I have been met
> with the impression to take a plea bargain which I've signed several papers
> stating I would not, and that seems to be our whole matters [sic] . . . .

4

I have not received one piece of paper concerning this case since I have been incarcerated. I have not one sheet of paper about this case to look back on when I am in jail. Also, one of [Kaiser's] associates, who I will not name, when I met the first time I could swear under oath I have smelled liquor on his breath. I am not – I am not gonna mention any names, I didn't want to risk a lawsuit. And also I have talked to Mr. Kaiser several times about different witnesses that obviously he doesn't feel I need, and I have mentioned to him and so have my parents and my wife about possibly different people we could bring, prior to May 23rd or whatever that was, and I still have not heard nothing about that either.

(Answer Ex. M at 23.)

The court responded:

. . . there are situations where release of counsel is warranted, when there's an ethical dilemma, when there is a situation where the relationship has broken down to the point where there's no communication. But what was presented to me yesterday and what's being presented to me today are differing views of how the case is approached. You have a lawyer who has discussed witnesses with you, you've indicated these witnesses are somebody you want him to talk with. On the other hand, it also appears that he was aware of these witnesses and did not feel that they would help your case here. And that's a strategic decision.

On the other hand, Attorney Shellow in her moving papers and in her presentation to the Court yesterday presented a great deal of possibilities, I'd like to do this, it's possible that this might be done, it's possible that this might be done. Against that the Court has the responsibility, some countervailing responsibilities. One is to administration of this Court . . . I have the victim rights obligations that I have to consider, I have to consider a fair trial for you, and I have to consider the administration of this Court's calendar . . . I don't have another date that could fit a trial like this in until probably after the beginning of the year . . . I also have a young victim, not the youngest as I acknowledged yesterday, who has to have this hanging out over their head. And on balance I denied the request. And I am comfortable with the request, I'm comfortable that Mr. Kaiser can represent you in a competent manner. 90 days ago this trial date was set, and the desire to have a different lawyer or these other issues should have been brought up much earlier in the proceedings.

(Id. at 24-25.)

5

At this point, Kaiser addressed the court concerning the issue one last time, actually beseeching it. He stated for the second time that "we've had a breakdown in communication." (Id. at 26.) He provided the court with a number of reasons why petitioner's request for substitution of counsel and a continuance was justified:

> because of the total breakdown in communication that we've had, that – and there is no taxpayer expense, this is only a one-day trial, I don't, considering the long time it took the alleged victim to report this case, I don't think a short adjournment would prejudice anyone but the Court. So I'm renewing my objection and just stating that we've had a breakdown in communication. I will do my best to represent him.

> THE COURT: All right. And I don't think I even have to ask the State for a response.

> MS. WILLIAMS: No.

> THE COURT: Because I know what the State's response will be. I'll note that for the record, and the case is going to proceed.

(Id. at 26-27.)

The trial proceeded as scheduled. G.J. testified that petitioner sexually assaulted him on several occasions in 1996 and 1998 when he spent the night with petitioner's stepson and once when he rode in a car with petitioner. A detective testified concerning G.J.'s initial statement accusing petitioner of sexual assault, and G.J.'s mother testified that G.J. spent the night with petitioner's stepson on several occasions and rode in a car with petitioner at least once. G.J.'s mother also testified that her son had never indicated any animosity toward petitioner or concerns about visiting his stepson prior to reporting the sexual assault in 2002. Petitioner testified, denying G.J.'s charges. Petitioner's wife testified that she and petitioner lived in a small apartment and that she was home during all of her son's sleep-overs, and thus she would have seen or heard any interaction

6

between petitioner and G.J. The jury convicted petitioner of four counts of first-degree sexual assault of a child.

Petitioner moved for post-conviction relief on the basis of ineffective assistance of counsel. The trial court denied relief, concluding that the failures that petitioner alleged on the part of Kaiser were strategic. Petitioner appealed, arguing among other things that the trial court's refusal to grant his motion for substitution of counsel and a continuance deprived him of his right to counsel of choice and his right to due process of law. The state court of appeals affirmed, and the state supreme court denied review.

I will state additional facts in the course of the opinion.

## II. HABEAS STANDARD

A petition for a writ of habeas corpus under § 2254 raises the question of whether a state is holding the petitioner in custody unconstitutionally. However, even if a petitioner's custody offends the Constitution, Congress has circumscribed the authority of federal courts to grant the writ. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may issue the writ only if the decision of the last state court to examine the merits of the petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). In assessing the reasonableness of the state court's decision, the federal court must assume that the state courts' factual determinations are correct unless the defendant rebuts them with clear and convincing evidence. § 2254(e)(1).

7

In the present case, petitioner asserts that the state court of appeals unreasonably applied clearly established Supreme Court law and based its decision on an unreasonable determination of the facts. An "unreasonable application of Supreme Court precedent" occurs when "the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000).

A state court unreasonably determines the facts of a case if it fails to consider key aspects of the record, Miller-El v. Cockrell, 537 U.S. 322, 340, 346-47 (2003), if the record does not support its determination, Taylor v. Maddox, 366 F.3d 992, 1008 (9th Cir. 2004), if it makes an unreasonable credibility determination, Miller-El, 537 U.S. at 340, or if it relies on the testimony of an individual who lacked personal knowledge of the facts, Bui v. Haley, 321 F.3d 1304, 1315-16 (11th Cir. 2003). A habeas court "may no more uphold such a factual determination than [it] may set aside a reasonable state-court fact-finding." Taylor, 366 F.3d at 1008.

### III. DISCUSSION

#### A. Factual Determination

I begin by examining petitioner's claim that the state court of appeals affirmed the trial court's denial of his motion for substitution and a continuance based on an unreasonable factual determination, namely that communication between petitioner and

8

Kaiser had not completely broken down.[2]  I conclude that this determination was "unreasonable in light of the evidence presented."  See § 2254(d)(2).  The determination was unreasonable because the record contained no evidence that supported it.

The evidence in the record relating to the communication between petitioner and Kaiser included several statements by Kaiser and one by petitioner.  On August 26, Kaiser told the court that communication between petitioner and himself "has completely broken down."  (Answer Ex. L at 4.)  On August 27, he stated again that "we've had a breakdown of communication."  (Answer Ex. M at 26.)  Later in his August 27 statement, Kaiser reiterated that there had been a "total breakdown in communication" between petitioner and himself.  (Id. at 27.)  On August 27, petitioner made his only statement regarding the matter, indicating to the court that he had tried to convey his concerns to Kaiser "on numerous occasions . . . to no avail," (id. at 22), and that he had asked Kaiser about certain witnesses and "still have not heard nothing about that either," (id. at 23).

After hearing Kaiser's and petitioner's statements, the trial court did not inquire into the matter further.  It took no testimony and asked no questions of Kaiser or of petitioner.  It simply made a factual finding that "the relationship has [not] broken down to the point where there's no communication."  (Id. at 24-25.)  In an attempt to support its finding, the court said that petitioner had "discussed witnesses" with Kaiser.  (Id. at 21.)  However, the statement to which the court referred did not support the court's finding.  In the statement, petitioner expressed frustration with Kaiser, stating that "obviously he doesn't feel that I need [witnesses] . . . I still have not heard nothing."  (Id. at 23.)  Thus, the record contained

---

[2]Respondent failed to respond to petitioner's argument regarding the trial court's factual determination concerning the breakdown of communication.

no evidence supporting the trial court's finding, and the finding was therefore unreasonable.

In affirming the trial court's denial of petitioner's request for substitution and a continuance, the court of appeals accepted and relied on the trial court's factual determination that communication between petitioner and Kaiser had not completely broken down. Because, as stated, the trial court's finding was unreasonable, the court of appeals's action was also unreasonable.[3]  See § 2254(d)(2); Taylor, 366 F.3d at 1008.

## B.    Constitutional Claim

I turn now to petitioner's claim that the trial court's denial of the motions to withdraw, substitute counsel and adjourn the case violated his constitutional rights.  Because the court based its decision on "an unreasonable determination of the facts," § 2254(d)(2), I do not examine petitioner's claim under the AEDPA standard, but rather I apply the general directive applicable to habeas cases to "dispose of the matter as law and justice may require," 28 U.S.C. § 2243.  Thus, in assessing whether petitioner's custody offends the Constitution, I review the trial court's decision de novo and may consider lower court decisions as well as those of the Supreme Court.  See Conner v. McBride, 375 F.3d 643,

---

[3]I hold only that based on the evidence in the record, the trial court's determination that communication between petitioner and Kaiser had not completely broken down was unreasonable.  I do not reach the question of whether communication between petitioner and Kaiser had totally broken down.  To resolve that issue, I would want to hold a hearing and probe the matter in greater depth as the trial court should have.  See § 2254(e)(2).  However, I need not do so because, as I will discuss, I conclude that even if communication between petitioner and Kaiser had not completely broken down such that petitioner had no representation at all, the trial court arbitrarily denied petitioner's motion for substitution of counsel and a continuance.

Case 2:06-cv-00481-LA   Filed 09/04/07   Page 10 of 27   Document 15

655 n.5 (7th Cir. 2004) (stating that where a habeas court finds a factual determination to be unreasonable under § 2254(d)(2), it then resolves the constitutional question under the pre-AEDPA standard).

**1.    Legal Standard**

The Sixth Amendment right to the aid of counsel is "fundamental."  <u>Gideon v. Wainright</u>, 372 U.S. 335, 342-43 (1963).  Inherent in this right is the right of a criminal defendant to retain the counsel of his choosing.  <u>Caplin & Drysdale v. United States</u>, 491 U.S. 617, 624-25 (1989); <u>Wheat v. United States</u>, 486 U.S. 153, 159, 164 (1988); <u>Powell v. Alabama</u> 287 U.S. 45, 68  (1932).  Thus, the Supreme Court has stated that trial courts must recognize a presumption in favor of defendant's counsel of choice.  <u>Wheat</u>, 486 U.S. at 164.  Further, courts must permit a defendant to take such actions as are necessary to retain his counsel of choice.  <u>Chandler v. Tretag</u>, 348 U.S. 3, 9 (1954); <u>Powell</u>, 287 U.S. at 71.  However, the right to counsel of choice is qualified.  For instance, a defendant has no right to representation by an attorney whom he cannot afford,[4] who does not wish to represent him or who has a conflict of interest.  <u>Wheat</u>, 486 U.S. at 159.  Ultimately, the Sixth Amendment bars a court from denying a defendant the right to retain his choice of counsel arbitrarily or unreasonably.  <u>See, e.g.</u>, <u>Lainfiesta v. Artuz</u>, 253 F.3d 151, 156 (2d

---

[4]Though an indigent defendant generally has no right to have counsel of his choice appointed, he has a Sixth Amendment right to new appointed counsel if his counsel has a conflict of interest or if his communication with such counsel has totally broken down. <u>See, e.g.</u>, <u>State v. Robinson</u>, 145 Wis. 2d 273 (1988); <u>United States v. Calabro</u>, 467 F.2d 973 (2d Cir. 1972).  However, this right arises out of the core right to counsel and the right to the effective assistance of counsel, not out of the qualified right to choice of counsel, which applies only to retained counsel.  <u>Schell v. Witek</u>, 218 F.3d 1017, 1026 (9th Cir. 2000).

11

Cir. 2001); United States v. Nichols, 841 F.2d 1485, 1502 (10th Cir. 1988); Ford v. Israel, 701 F.2d 689, 692 (7th Cir 1983).

Of course, "the Sixth Amendment does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case." United States ex rel. Kleba v. McGinnis, 796 F.2d 947, 952 (7th Cir. 1986) (internal quotation marks omitted); see also Linton v. Perini, 656 F.2d 207, 209 (6th Cir. 1981). Thus, a court's denial of a defendant's counsel of choice is not arbitrary or unreasonable where it is tied to a motion for a continuance that will needlessly delay trial. Nichols, 841 F.2d at 1504; Kleba, 796 F.2d at 952. However, a denial of a motion for a continuance itself violates a defendant's right to due process if it is arbitrary or unreasonable. Ungar v. Sarafite, 376 U.S. 575 (1964). This is so because "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." Id. at 588.

Thus, related motions for substitution of counsel, where new counsel has been retained, and a continuance, can implicate both the Sixth Amendment qualified right to choice of counsel and the Fourteenth Amendment right to due process of law. Morris v. Slappy, 461 U.S. 1, 11 (1983); Linton, 656 F.2d at 209. In examining such motions, a court must balance the defendant's constitutionally-recognized interest in being represented by the counsel of his choice and the public's interest in the wise administration of justice. The court should look at the reasons for the proposed substitution and continuance as well as factors that weigh against delaying the case. Courts have considerable latitude in balancing these factors. However, if in denying such motions a court manifests a "myopic insistence upon expeditiousness," then its ruling is arbitrary and violates both the defendant's Sixth Amendment right to choice of counsel and his Fourteenth Amendment

12

right to due process of law. <u>Wheat</u>, 486 U.S. at 159; <u>Morris</u>, 461 U.S. at 11; <u>Ungar</u>, 376 U.S. at 588; <u>see also</u> <u>Nichols</u>, 841 F.2d at 1502; <u>Ford</u>, 701 F.2d 689, 692; <u>Linton</u>, 656 F.2d at 212; <u>United States v. Burton</u>, 584 F.2d 485, 489-90 (D.C. Cir. 1978).

In determining whether to grant a continuance to enable newly retained counsel to prepare for trial, courts generally weigh such factors as whether the defendant made the request simply to delay, whether he has good reason to discharge his attorney and whether he has previously obtained continuances. Carl T. Drechsler, <u>Withdrawal, Discharge, or Substitution of Counsel in Criminal Case as Ground for Continuance</u>, 73 A.L.R. 3d 725 (2007). If a trial court weighs the relevant factors inappropriately, it abuses its discretion. However, not every abuse of discretion violates the Sixth and Fourteenth Amendments. <u>Schell</u>, 218 F.3d at 1024-25. As previously stated, only an arbitrary denial of justified motions for substitution of counsel and a continuance offends the Sixth and Fourteenth Amendments. <u>Id.</u>; <u>see also</u> <u>Wheat</u>, 486 U.S. at 164; <u>Ungar</u>, 376 U.S. at 588.

Prior to the Supreme Court's recent decision in <u>United States v. Gonzalez-Lopez</u>, 126 S. Ct. 2557 (2006), the federal circuits had split as to whether a defendant claiming a denial of the right to counsel of choice had to show the same sort of prejudice as a defendant claiming ineffective assistance of counsel. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In <u>Gonzalez-Lopez</u>, the Supreme Court held in the negative, stating that the right to counsel of choice is an independent Sixth Amendment right and that the denial of such right constitutes a structural error. 126 S. Ct. at 2562-65. However, I must analyze the present case under the law applicable at the time that petitioner sought relief in the state courts. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 296 (1989); <u>Rodriguez v. Chandler</u>, 492 F.3d 863 (7th Cir. 2007). At the time that petitioner's conviction became final, the

13

governing case in this circuit was <u>Rodriguez v. Chandler</u>, 382 F.3d 670 (7th Cir. 2004). Under <u>Rodriguez</u>, a defendant who was denied the right to counsel of choice did not have to establish that but for the denial, there was a reasonable probability of a different outcome as in an ineffective assistance case. Similarly, a habeas petitioner's claim of denial of the right to counsel of choice was not subject to the harmless error analysis of <u>Brecht v. Abrahamson</u>, 508 U.S. 968 (1993).

However, under <u>Rodriguez</u>, a defendant claiming a denial of the right to counsel of choice did have to establish that the denial had an "adverse effect" on the presentation of his case.[5] 382 F.3d at 675. The Seventh Circuit defined such adverse effect as:

> an identifiable difference in the quality of representation between the disqualified counsel and the attorney who represents the defendant at trial. The difference does not have to be great enough to undermine confidence in the outcome – that is the standard under <u>Strickland</u> – but it must be enough to show that the defendant's representation suffered a setback.

<u>Id.</u> (internal citations omitted). The court also suggested that a habeas petitioner could establish adverse effect by showing that his counsel failed to pursue a "reasonable alternative defense strategy." <u>Id.</u>

---

[5]Courts apply a different rule when a defendant claims that a court has wrongly decided his motion for a new appointed counsel. As previously indicated, a defendant has no right to have his preferred counsel appointed to represent him. Thus, when a court denies a defendant's request for new appointed counsel, the defendant can only show a denial of a constitutional right if he can establish that his counsel was ultimately ineffective. <u>United States v. Harris</u>, 394 F.3d 543, 554 (7th Cir. 2005); <u>United States v. Zillges</u>, 978 F.2d 369, 372 (7th Cir. 1992). In other words, the defendant must establish prejudice as required by <u>Strickland</u>. <u>Zillges</u>, 978 F.2d at 372; <u>see also</u> <u>People v. Bingham</u>, 847 N.E.2d 903, 907-08 (Ill. Ct. App. 2006) (distinguishing between the nature of the review of a denial of a request for a continuance depending on whether the request implicates the right to choice of counsel).

14

## 2.    Application of Standard

I turn now to the question of whether the trial court's denial of petitioner's motion for substitution of counsel and a continuance was arbitrary.  A judicial decision is arbitrary if it is "founded on . . . preference rather than on reason or fact."  Black's Law Dictionary at 100 (7th ed. 1999).  In the present case, it is clear that the trial court's decision was founded on the court's preference rather than on reason or fact.  No fair-minded reviewer can evaluate the record in the present case without concluding that the trial court was so intent on adhering to the schedule it had established at petitioner's arraignment that it lacked any willingness to fairly consider the justifications advanced by petitioner in support of his motions and to fairly weigh them against possible countervailing factors related to continuing the case.  As I will discuss, the trial court dismissed out of hand the reasons that petitioner proffered for the motion, making no attempt to determine whether the facts supported them, and then refused to balance such reasons against factors that might have supported denying the motions.

### a.    Reasons Proffered for Substitution and Continuance

Petitioner proffered three reasons for requesting a substitution of counsel and a continuance:  (1) communication between himself and Kaiser had totally broken down; (2) Kaiser had inadequately investigated the case; and (3) he disagreed with Kaiser's overall approach to defending him.  These reasons were, on their face, legitimate.  Thus, the trial court was obliged to explore them and balance them against any factors that might have militated against granting petitioner's request.  Instead, the court summarily rejected them.

Petitioner's first two arguments raised questions of fact:  whether communication

15

between petitioner and Kaiser had totally broken down and whether Kaiser had conducted an adequate investigation. However, the court made no effort to ascertain the facts, taking no testimony and asking not a single question. Unquestionably, a total breakdown in communication between client and counsel is a proper ground for substituting counsel. Such a breakdown would implicate not only the right to retain choice of counsel but also the core right to assistance of counsel. See Plumlee v. DelPapa, 465 F.3d 910, 920 (9th Cir. 2006) (citing cases); United States v. Brown, 79 F.3d 1499, 1506 (7th Cir. 1996). For this reason, a total breakdown in communication justifies not only the substitution of newly retained counsel but also the appointment of new counsel for an indigent defendant. Harris, 394 F.3d at 552; Brown, 79 F.3d at 1506.

However, even if a breakdown in communication is not so severe as to implicate the right to counsel per se, where a defendant has retained alternative counsel, it may provide a reasonable justification for a substitution of counsel and a continuance. Of course, the Constitution does not guarantee a "'meaningful relationship' between an accused and his counsel." See Morris, 461 U.S. at 13. As such, mere personality conflicts are generally insufficient to justify new counsel. Id. However, it is clear that the court should have examined whether petitioner was able to communicate with Kaiser and, if so, to what extent. If the facts showed that communication had completely broken down, the court should have granted petitioner's motion without further ado. If the facts showed that communication had only partly broken down, the court should have balanced the communication that existed between petitioner and Kaiser against any countervailing factors. However, as previously discussed, the court made no effort to discover the facts or to balance them against countervailing factors.

16

Petitioner's second contention, that Kaiser had failed to adequately investigate the case, was also a proper ground for substitution of counsel and a continuance.  See Washington v. Smith, 219 F.3d 620, 631 (7th Cir. 2000) (stating that a failure to investigate can constitute ineffective assistance).  Petitioner stated that he asked Kaiser to talk to certain potential witnesses but that Kaiser was so intent on convincing him to seek a plea bargain that he failed to contact them.  Once again, the court made no effort to ascertain the facts, including the basic question of whether or not petitioner's allegation against Kaiser was true.  The court again took no testimony and asked no questions either of petitioner or Kaiser.  It simply asserted without any factual basis that Kaiser "was aware of these witnesses and did not feel that they would help your case here.  And that's a strategic decision."  (Answer Ex. M at 24-25.)  Nothing in the record supported this assertion.  Further, the court made no attempt to balance the effect of Kaiser's possible investigative failures against any factors weighing against a continuance.

Petitioner's third justification for seeking substitution of counsel and a continuance was his concern about Kaiser's approach to his defense.  This justification is perhaps the most persuasive but the court dismissed it out of hand, indicating that it considered a reasonable dispute about strategy to be an illegitimate reason for a substitution of counsel.[6]  However, the fact that strategy is generally the province of counsel, Jones v. Barnes, 463 U.S. 745, 746 n.6 (1983), does not mean that a defendant is forever tethered

---

[6]The court may have been attempting to follow State v. Wanta, 224 Wis. 2d 679, 703 (Ct. App. 1999) in which the Wisconsin Court of Appeals found that "[m]ere disagreement over trial strategy does not constitute good cause to require the court to permit an appointed attorney to withdraw."  Of course, Wanta dealt with appointed counsel and the right to ineffective assistance of counsel, not the right to be represented by retained counsel of choice.

Case 2:06-cv-00481-LA   Filed 09/04/07   Page 17 of 27   Document 15

to a retained attorney with whom he has a fundamental strategic disagreement.  In fact, the recognition by courts of a qualified right to choice of counsel "emerges out of a defendant's broader right to control the presentation of his defense."  Lainfiesta, 253 F.3d at 154; see also Nichols, 841 F.2d at 1502 ("Attorneys are different, and their differences can influence the defense presented by a defendant.  Therefore, a defendant is afforded an opportunity to select an attorney."); Robins v. United States, 404 U.S. 1049, 1049 (1972) (stating that "[l]awyers are not necessarily fungible goods").  The Supreme Court has made clear that the allocation of responsibilities between a defendant and his counsel "can only be justified . . . by the defendant's consent, at the outset, to accept counsel as his representative.  An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction."  Faretta v. California, 422 U.S. 806, 820 (1975).  Of course, this is not to say that the Sixth Amendment requires a court to grant a substitution and continuance each time a defendant disagrees with his attorney about strategy.  However, when a dispute about strategy is significant, the defendant faces grave charges and he has actually retained new counsel who wishes to pursue his chosen strategy, a court may not summarily dismiss the defendant's concerns about his present counsel as irrelevant to his constitutional rights.[7]

---

[7]I note that the importance of an attorney's strategic decisions comes sharply into focus when one considers that under Strickland, an attorney's action cannot be considered deficient performance if made for a strategic reason.  466 U.S. at 688-89.  Thus, when a court denies a defendant's motion to substitute counsel on the ground that the dispute involves only the defendant's disagreement with counsel's strategy, the court will most certainly deny the defendant's post-conviction motion based on ineffective assistance of counsel.  This is precisely what happened in the present case – the court did not allow petitioner to escape his counsel's strategic decisions prior to trial or to escape the consequence of those decisions after trial.

18

In the present case, petitioner faced a charge that for him, a middle-aged man, effectively carried a life sentence. He maintained his innocence and wanted to go to trial, but according to undisputed testimony, Kaiser was pressing him to plead guilty. Moreover, Kaiser's trial strategy was a passive one. He wanted to present minimal evidence and simply argue that the state had not met its burden. Petitioner, reasonably fearing that a jury would convict him if not given a reason to disbelieve G.J., wanted to explore a more active defense that would likely involve expert testimony concerning a juvenile's motivation for fabricating a charge of sexual abuse and testimony on the counseling techniques that first led G.J. to accuse petitioner. Petitioner's interest in exploring such a strategy was certainly reasonable, and he had retained a respected defense lawyer who recommended and was prepared to pursue it. However, just as it minimized Kaiser's alleged failure to investigate as a "strategic decision," the trial court without inquiry airily dismissed petitioner's and his new counsel's plan as "a great deal of possibilities, I'd like to do this, it's possible that this might be done, it's possible that this might be done." (Answer Ex. M at 24-25.)

In sum, petitioner provided the trial court with three justifications for his request for substitution of counsel and a continuance, and the trial court dismissed each of these justifications as insignificant without any reference to reason or fact. The court failed to examine the facts underlying the first two justifications and failed to notice that the third justification clearly went far beyond a mere personality conflict and implicated concerns core to the right to choice of counsel. Further, the court utterly failed to recognize the presumption in favor of a defendant's counsel of choice even though petitioner's preferred counsel was standing by, prepared to take over his representation. If petitioner had not

19

coupled his motion for substitution of counsel with a motion for a continuance, it would already be clear that petitioner's right to retain his choice of counsel was violated. However, because petitioner brought both motions, I must turn to whether countervailing factors – namely, concerns related to the request for a continuance – provided a nonarbitrary reason to deny petitioner's motions.

### b. Countervailing Factors

The court cited two reasons for denying petitioner's motion for substitution of counsel and for a continuance. First, it stated that it had to consider the administration of its calendar. It explained: "If I were to have taken this case off tomorrow or today, I don't have anything to substitute in its place." (Answer Ex. M at 25.) Second, the court cited its obligations to the complainant.[8] Although these considerations were on their face legitimate, in the context of the present case they were only minimally relevant and their significance was so far outweighed by petitioner's interests that the court's ultimate decision was plainly arbitrary.

Unquestionably, if granting a continuance will create an administrative problem such as "assembling the witnesses, lawyers and jurors at the same time," Morris, 461 U.S. at 11, a court may justifiably deny a motion such as petitioner's. Courts have denied motions for continuances based on administrative problems in a number of fact situations. See, e.g., id. (involving a defendant's request for a continuance not made until the first day of

---

[8]The court also indicated that it did not believe that petitioner's counsel would be constitutionally ineffective. However, this was not a reason for denying petitioner's motion as much as an opinion that a denial would not result in a violation of the right to effective assistance of counsel. The court also suggested that petitioner's right to a speedy trial factored into its decision. However, this statement made no sense because petitioner had waived his right to a speedy trial and was desperately seeking a continuance.

20

trial in a case where the charge was a minor one and the defendant's counsel stated that he was fully capable of representing the defendant); Newton v. Dretke, 371 F.3d 250, 255 (5th Cir. 2004) (denying motion for continuance made eighteen months after indictment, ten months after assignment of counsel and twenty-four days into voir dire); Castillo v. Matesanz, 348 F.3d 1 (1st Cir. 2003) (denying motion made nearly two years after indictment, more than three months after the allowance of a substitution of counsel premised on agreement that there would be no further continuances and less than two weeks before trial); State v. Theodore, 2 P.3d 831, 937 (Ariz. 2003) (denying motion made nearly three years after indictment, where the case involved several lawyers and a number of defendants, the trial was expected to last a month and the court previously granted fifteen continuances); Kleba, 796 F.2d at 952 (denying motion made more than sixteen months after the defendant's arrest and after granting six continuances, where the defendant had not yet located a new attorney). But see, e.g., Linton, 656 F.2d at 212 (stating that "docket control must not be exercised in an arbitrary manner so as to deny a defendant the right to have his own retained counsel" and finding docket concerns insufficient to overcome the presumption in favor of the defendants' rights where the record did not indicate any scheme to delay the trial and there was no showing of inconvenience to the witnesses, opposing counsel, or the court); People v. Williams, 194 N.W.2d 337 (Mich. 1972) (holding that administrative concerns, including the fact that the court had granted several continuances, had already impaneled a jury and was heavily burdened, were not sufficient to overcome the defendant's right to counsel of choice where his present counsel had failed to investigate leads).

21

The present case has little in common with those cited above presenting administrative problems. The case was an extremely simple one to try and was anticipated to take one day, two at most. The State had only three witnesses – the complainant, his mother and a police officer – all of whom could have appeared at a later date. Further, petitioner brought the motion approximately a week before trial, thus the court had not yet assembled witnesses, jurors and lawyers. The court could therefore have granted the motion without inconveniencing any member of the public. In addition, petitioner had already retained new counsel and was not asking the court to appoint counsel or grant him time to seek new counsel. Any adjustments to the court's calendar that a continuance would have required would have been minimal, certainly paling in significance to what was at stake for petitioner. At worst, granting petitioner's motion would have required the court to do non-courtroom work for two days in August, whereas the charges against petitioner involved possible life imprisonment.[9]

Further, petitioner did not seek a lengthy continuance. It is revealing that the trial court did not even ask petitioner's new counsel how much time she needed to prepare for trial; in its view, the answer would not have mattered because any delay was unacceptable. Moreover, it is not clear that the court could not have tried the case within a relatively brief period of time. The court suggested that it could "probably," (Answer Ex. M at 25), not try the case until January because of its busy calendar and other factors such as the "deer hunting" season and the "holidays," (Answer Ex. K at 12). However, even assuming that the court could not have squeezed a brief trial into its schedule before January, the time

_____

[9]Courts must frequently cancel scheduled trials for, among other reasons, decisions to plead guilty.

22

between arraignment and trial would still have been only seven months, hardly excessive in such a serious case. See Bingham, 847 N.E.2d at 907 (noting that the case, involving a far less serious crime, "progressed quickly," as it had "been pending only three months"); see also Newton, 371 F.3d at 255; Castillo, 348 F.3d 1.

Finally, petitioner was clearly not simply trying to delay his trial. As stated, petitioner offered legitimate and convincing reasons for his motions. The charges against him had been pending for only three months and the court had never previously granted a continuance. After he retained new counsel, petitioner immediately requested a continuance. Given that he had only about twelve weeks to prepare for trial on serious charges, and given his undisputed testimony that his counsel had failed to communicate with him regarding trial strategy, the timing of his motions was wholly understandable and not in the least suspect. Moreover, petitioner had remained in jail from the time of his arrest and thus, other than being able to proceed with his counsel of choice, had nothing to gain by delaying the trial.

Ultimately, the court's concern for the "administration of the court" came down to a single-minded focus on its own schedule and an unreasonable inflexibility about modifying it. Such rigidity can only be characterized as arbitrary. See Linton, 656 F.2d at 212 (finding that in a case involving serious charges, mere "docket control" unaccompanied by other administrative hurdles cannot justify the denial of a reasonable motion for substitution of counsel and a continuance).

The second reason the trial court gave for denying petitioner's motion was its obligation to the juvenile complainant. It appears that the court thought that Wisconsin's victims' rights statute necessitated the denial. If so, the court's view of the statute was

23

clearly mistaken.[10]  Moreover, the state constitution makes clear that victims' rights do not "limit any right of the accused."  Wis. Const. art. 1 § 9m.

Of course, whether or not a state statute explicitly recognizes victims' rights, a court may reasonably consider the effect of a continuance on a complainant.  However, notwithstanding its repeated incantations that the complainant was a juvenile, the trial court actually failed to consider whether a continuance would have affected the complainant. If it had, it would have had to conclude that the record contained nothing suggesting that a continuance of several months would have harmed or even inconvenienced G.J.  Neither G.J. nor his mother asked for an early trial date (as they could have under state law).  No doctor or counselor indicated that a brief delay would cause G.J. to become anxious.  G.J. was a teenager, not a young child, and the record contained nothing indicating that he would not have understood a brief continuance.  Further, the trial court ignored the fact that G.J. did not come forward with his accusation until four to six years after the assaults allegedly occurred, a fact which makes clear that G.J. would have had no problem remembering relevant information at a later date.[11]  Further, because G.J. lived in a secure facility for troubled juveniles, the trial court had no cause for concern that he would not appear for trial or that he was not in a supportive environment.  The trial court considered none of this.

_____

[10]The statute provides only that a victim has the right to have "his or her interest considered when the court is deciding whether to grant a continuance in the case" and to a "speedy disposition of the case."  Wis. Stat. § 950.04.  Another statute regarding juvenile victims contains no language relating to continuances.  See Wis. Stat. § 950.055.

[11]The court also ignored the fact that the delay in bringing the charges made them much harder to defend.

24

### c.    Conclusion

For the reasons discussed, in denying petitioner's motions (and Kaiser's), the court ignored the presumption in favor of petitioner's counsel of choice, see Wheat, 486 U.S. at 164, and the Supreme Court's disapproval of expeditiousness for its own sake when a constitutional right is at stake, see Ungar, 376 U.S. at 588.  The court utterly failed to recognize petitioner's weighty interest in going to trial with the lawyer he chose to represent him and petitioner's more than reasonable justifications for wishing to discharge his original attorney.  Petitioner had split with Kaiser for reasons beyond a mere personality conflict and had retained new counsel.  His new counsel had decided to pursue an alternative strategy and identified an expert likely to support such strategy, and needed additional time to prepare for trial.  However, the court treated petitioner's motion as if he were simply asking for a replacement of appointed counsel and thus had no right other than the right to effective assistance of counsel.

In denying petitioner's motions, the court cited administrative problems and the complainant's needs but failed to actually analyze either factor.  Had it done so, it would have found them insubstantial at most.  The court never once acknowledged that from petitioner's standpoint the charges were very grave, much less balance such gravity against countervailing factors.  In fact, the court suggested that the fact that the case was a "serious felony case" rendered the complainant's rights (not petitioner's) particularly strong.  (Answer Ex. L at 9.)  The court also failed to consider the total absence of evidence that petitioner brought the motions in bad faith or for the purpose of delay.

The record shows that from the time of petitioner's arraignment, the court treated speed as its top priority and the trial date as immutable.  Just as the court had denied

25

petitioner's two previous reasonable motions for a continuance without any discussion of petitioner's interests, it also denied the motions to withdraw and for substitution and a continuance without any meaningful analysis and without recognizing that such motions implicated constitutional concerns.  The court denied petitioner's motions for substitution of counsel and a continuance without regard to fact or reason and displayed "a myopic insistence upon expeditiousness" in the face of two independent constitutional rights.  See Ungar, 376 U.S. at 588; see also Linton, 656 F.2d at 212.  The court therefore acted arbitrarily and denied petitioner his Sixth Amendment right to choice of counsel and his Fourteenth Amendment right to due process of law.

### 3.    Adverse Effect

Having determined that the trial court denied petitioner's right to retain his chosen counsel, I turn to the question of whether such denial had an adverse effect.  I conclude, as I must, that the facts of the present case easily satisfy the Seventh Circuit's adverse effect standard.  Had Shellow represented him, petitioner would have pursued an entirely different strategy than the one employed by Kaiser.  Shellow wanted to call Rawhide's counseling techniques into question, along with the police's questioning of G.J., and suggest that G.J. falsely accused petitioner in order to portray himself as a victim to Rawhide counselors.  Further, Shellow wanted to present evidence that G.J. knew that petitioner had previously been convicted of child sexual abuse and thus knew that a fabricated assault charge against him would be taken seriously.  In addition, Shellow

26

wanted to present evidence that G.J. had been questioned as to whether petitioner had assaulted him soon after the alleged assaults, and G.J. had denied any sexual contact.[12]

Shellow's strategy had an obvious downside – it would have forced petitioner to admit the nature of his prior conviction.  On the other hand, it would have given the jury some basis upon which to doubt G.J.'s testimony.  The fact that Shellow would have pursued an altogether different and entirely reasonable defense is sufficient to establish adverse effect.  See Rodriguez, 382 F.3d at 675 (suggesting that a habeas petitioner could show an adverse effect by showing that his counsel failed to pursue a reasonable alternative defense strategy).

## IV.  CONCLUSION

Therefore,

**IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **GRANTED**, and that petitioner be released within 180 days of the date of this decision unless the State decides to retry him.

Dated at Milwaukee, Wisconsin, this 4 day of September, 2007.


/s_____
LYNN ADELMAN
District Judge

---

[12]Kaiser did not wish to present this evidence because it would have caused G.J. to acknowledge that petitioner had been accused of sexual assaulting another child in the past, which had led adults to question G.J. about his own contact with petitioner.  However, because Shellow specifically wished to introduce evidence that petitioner was convicted of such sexual assault for the purpose of explaining why G.J. would accuse him, Shellow would also be able to elicit G.J.'s prior inconsistent statement.

27